Thank you, Your Honor. I'm David Lowery for the appellant, and I'll save my time for rebuttal. Thank you. Good morning, Your Honors. Didn't even have time to get nervous. Thank you. I'm Catherine Miller on behalf of the Commissioner of Social Security. This case presents two basic questions. That is, whether substantial evidence supported the ALJ's finding of onset of disability, and whether the ALJ complied with the district court remand order in this case. The answer to both of these questions is yes. Now, plaintiff's challenge to the Step 2 finding and the onset of disability issue essentially boils down to an argument that another date should have been chosen. But the issue before this Court is not whether another date could have been chosen, but whether the actual date chosen by the ALJ is supported by substantial evidence. Here, the ALJ's onset finding was based on the absence of any contemporaneous medical corroboration for plaintiff's claim of longstanding PTSD, the absence of any reliable medical opinion evidence establishing the existence of a mental health impairment. I'm curious about that, because the remand was focused on five documents, which included treating doctors, opining that he had had PTSD essentially for 30 years and essentially had either been in denial or was masked or aggravated or whatever by alcoholic, alcohol abuse. And that obviously bothered the panel, and that's what we went back for. Now, the extent to which the ALJ considered those, I think we have to – I don't find any particular analysis on his part as to why he – how he reasoned his way through it. There's the testimony of the doctor. The psychologist? Yeah, the psychologist, the lady doctor, who came in, and I read her testimony. She sort of – I can almost visualize her kind of throwing her hands up on the stand and say, well, I can't tell who could have been predated or not. I see the alcohol and all of that. She agrees that family meeting might have actually, credibly crystallized it in his mind and that it's credible for him to have finally waked up and gone to the VA for PTSD treatment. And particularly, as hard – I know in the context of the date we're talking about, but PTSD is – PTSD now, just during this week, I've been reading the paper, and there are more references to PTSD. It's sort of just a common everyday – it's like fibromyalgia. It's now become a household word. So it's not clear to me whether or not back then he would have been as aware of PTSD as people might be now. And it seemed the ALJ was – as I said, it's hard to believe that somebody with PTSD wouldn't have gone to the VA. But that's maybe superimposing a modern – you know, a current-day attitude toward all of this. So I come away from this unsatisfied that the ALJ really did do what the remand was intended to do. And I'm grappling to try and find where in his rationale is he analyzed the documentation. Well, the ALJ, she did say in her opinion that she noticed there was an absence of any medical corroboration. She also specifically says in the opinion – and I can't – it may be at page 17 – there's an absence of any reliable medical opinion evidence establishing the existence of a mental health impairment. Now – What do we do with the letters that say that since his return from Vietnam, Mr. Stocke has suffered symptoms of PTSD that had a chronic and severe effect on him socially? That's from Kutterman, a readjustment counseling therapist who experienced PTSD. Well, unfortunately, there is no contemporaneous medical corroboration during that period. I understand. I understand. But that's why the panel remanded. Right. Well, in this circuit, we have the Smith case, which says that medical evaluations after the expiration of date last insured are admissible to look at the nature and severity of an impairment that already has been shown to exist during the relevant period at issue. Here, we don't even have clinical findings. We don't have any signs. Medical expert testified. There was nothing in the record. Here's – I'm sorry. Here's my basic problem with it. The case was sent back to the ALJ saying, here are five documents. Please consider these. And the analysis by the ALJ never once mentions the five documents or how the ALJ considered them. And, you know, whatever rationale you're now giving for rejecting them, we can't review anything other than what was actually done in an administrative law context. We can't affirm for other reasons. When the whole point of the remand was to deal with those five pieces of paper, and the ALJ doesn't say anything about them, how is that – that the remand order was obeyed? Well, I think that the ALJ clearly – thoroughly reviewed the record. And I would just point out that the remand order – You say it's clear. Could you explain the answer to Judge Graber's question? Well, the ALJ based her finding in part on the medical expert opinion testimony. And if you look at the transcript of proceedings, they did discuss the VA doctor opinions. The transcript did, but the ALJ didn't. That's my problem. We're not reviewing the transcript. We're reviewing the decision. But the ALJ does say in her opinion that there was an absence of any medical reliable opinion evidence establishing the existence of an impairment. These are the treating physicians. At least some of them – one of them was a treating physician. And so with respect to a treating physician, an ALJ has to do more than say, well, it doesn't seem good to me. There have to be reasons given. So it seems that it's deficient at least with respect to the treating doctor. Well, with regard to the existence of an impairment, however, a treating doctor opinion is not binding on an ALJ. I didn't say that. I said we have to have reasons. And the ALJ doesn't say, here's the treating doctor's opinion and here are the six reasons why it is not persuasive to me. It just isn't there. Well, I would point out also that all of those references to going to specific pages are also in the Appeals Council remand order, not the District Court remand order. And it seems like the emphasis of that order is more, can we find an earlier onset date? The ALJ looked at the prior decision, which thoroughly discussed all of the VA opinions in that case. Now, maybe the ALJ didn't say the magic words in the subsequent decision, but she did review all the evidence of record and, in fact, attempted to create a more complete record on which to determine the issue of onset. What role, if any, does Dr. Dragovich, who testified that his psychological state may have rendered him unmotivated to seek treatment, what role, if any, should that play in our analysis? I think that was, she was talking about individuals in general. She wasn't talking about Mr. Stockey per se. She did say, well, yes, sometimes individuals can be, their condition or their symptoms cause them to be unmotivated to seek treatment. On this record, however, we have evidence of some heavy drinking. We do have some earnings that are sporadic. We do have some marriages. But we don't know why. It's not necessarily attributable to PTSD. It could be drinking. But we don't have lay testimony linking the VA opinions back to this prior period. We don't have anything linking those opinions back. He sought treatment in what, 1999, is that it? 1998 is when he first sought treatment. 1998. And I wasn't sure I understood. I thought it was agreed that there's a sufficient diagnosis of PTSD going forward. Yes. And he has to get back. We're looking at an earlier onset. I know, but what's the gap? What's the gap? 1995 to 1998. So one year. So he has to get back before 98, right? So he has to get back about 12 some odd months. And you're saying that the people who are writing these statements, these doctors saying he has severe PTSD now, that there's no credible evidence that you can't use that to go back, particularly when they are opining it has been something that has been extant since Vietnam, which would be the traumatic event, for heaven's sakes, that would create all of this current PTSD, certainly one of them. I think what's clear from this record is PTSD is not a well-understood disease at all, and people can have different reactions to it. And I see I'm close to my time being up, but I just want to mention that the VA treating doctor said both that Mr. Stocke had the classic pattern of PTSD symptoms and typical history, but at the same time he said he seemed to think that Mr. Stocke could be in denial for 30 years and have no symptoms, and then suddenly they'd show up, and that's at SCR441. So it's not a well-understood disease. Any further questions? Thank you. Well, Mr. Lauer, you have lots of time left. Thank you. I'll use very much of it. A lot of this is governed by Social Security ruling 8320, and that ruling mentions in part in determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence. In this case, the sources analyzed that historical record, which was long periods of unemployment with some short periods of unemployment, and they took the onset back decades, not just back to 1995. The treating sources, as was pointed out in argument, were ignored by the ALJ. They just paid no attention whatsoever. Well, we don't know that. We don't know that. They might have been considered. We just don't know that.  She was looking at some of those records, talking about the AF30 or 40, whatever. Forty. Yeah, 40. So it was clear that she was at least considering in that sense and was asking the medical experts to find out around them. What is missing, I don't know what the ALJ specifically didn't view or specifically is pressing with you. Well, the ALJ decision was a little light on consideration of treating sources, notwithstanding what might have been mentioned at the hearing. That's the problem. You can't speculate as to what was being thought about at the hearing. It's what's in the decision that tells you what was thought about when the case was decided. One thing I'd like to throw in is this should be remanded for payment of benefits and not have the heads we win, tails let's play again problem. Thank you. Thank you. The case just argued is submitted. And we appreciate your arguments. We'll hear one more case before our morning break, and that is Alexander Manufacturing Incorporated Employee Stock Ownership versus Illinois Union Insurance Company. And we do have one sheet that was left on the bench for us. Counsel may begin whenever you're ready.
judges: Graber, Fisher, Smith